PEOPLE *v.* EAGLE.

CRIMINAL LAW—EVIDENCE—LARCENY—HARMLESS ERROR.

Where a witness, in a prosecution for the larceny of a cow, had positively identified respondent as the man who sold him a cow answering the description of the one lost, evidence as to his conversation with the sheriff and the circumstances leading up to his identification of respondent by a photograph, was harmless error.

Error to Alpena; Emerick, J. Submitted October 28, 1915. (Docket No. 106.) Decided December 21, 1915.

George Eagle was convicted of larceny. Affirmed.

*Grant Fellows,* Attorney General, and *Carl R. Henry,* Prosecuting Attorney, for the people.

*I. S. Canfield,* for respondent.

KUHN, J. The respondent was placed on trial in September, 1913, under an information charging him with having, on the 29th of June of that year, committed the crime of larceny of one "Jersey colored milch cow, of the value of $50, of the property of Mary E. King." The jury were unable to agree upon a verdict and the court discharged them from further consideration of the case. He was again placed on trial in the following December term of the court for the same offense, and was then convicted by the verdict of the jury and sentenced to be confined in the State prison at Jackson for a period of not less than 2½ years and not more than 5 years from and including the 13th day of December, 1913. A review of the case is sought here by writ of error.

The assignments of error which counsel for respond-
ent urges to reverse the case are grouped by him in his
brief under three headings:

(1) Exclusion by the court of competent evidence
in favor of the respondent.

(2) Admission by the court of incompetent evidence
against the respondent.

(3) Prejudicial errors by the court in charging the
jury.

The cow alleged to have been stolen was 11 or 12
years of age, and had been raised by Mrs. King, the
owner, from a calf.  Some 6 or 7 years before the trial
the cow had been dehorned, and the horn on the right
side was three or four inches long, while the horn on
the left side was a mere stub.  Upon the trial the peo-
ple produced a skull, to which some hair was still at-
tached, and two witnesses (Mrs. King, the owner, and
William King, a neighbor) identified the skull as that
of the lost cow by the peculiarities of the horns.  Mrs.
King further stated that she was able to identify it
by "what little hair is left on there, and I can almost
see the expression of the cow just in them bones, as
she looked to me when alive."

A witness named Boilore, who was in the business of
buying and selling cattle, was asked the following ques-
tions by respondent's counsel on cross-examination:

"Q. Could anybody tell anything about that partic-
ular skull belonging to any particular cow?

"A. Well, I couldn't.

"Q. Well, would you think so?

"A. I couldn't say.

The court thereupon ruled:

"I don't think that that testimony is competent, Mr.
Canfield.  A mere matter of opinion for the jury to
say."

It is urged that this is error, and that he should have
been allowed to testify.  It seems to us clear, however,

that the witness had already said that he "could not say." There could not, therefore, have been any error in the court's ruling.

Error is also urged because of the refusal of the court to permit certain evidence on the cross-examination of the people's witness John Simmons, the sheriff, which was offered to show that the sheriff had associated with him a mind reader in his efforts to apprehend the offender. He was sworn to show where and how he located the skull, and further, to establish the custody of the skull from the time it was exhibited to the witnesses until the time it was produced in court. The court, with reference to this testimony, said:

"The people of this State, the prosecution in this case, have not placed any reliance on any mind readers, nor other readers, that I can see. Noboby is trying to tell fortunes or anything of that kind. They are just telling you—Mr. Simmons is telling you what he did. Of course, you would have a right to cross-examine, if you dispute the fact that he got the head up there. I don't see what this mind reader has got to do with the case myself. If he didn't get the head up there, that is all right. But he says it is where he got the head; and there has been some witnesses that expressed the opinion that this is the head of Mrs. King's cow. There are no mind readers in here, and I would like to keep them out, if I could, because it hasn't got a thing to do with this case."

We are of the opinion that no error was committed by the court in restricting the cross-examination of the witness in the way he did, and excluding testimony which was clearly incompetent and immaterial.

The witness Boilore testified that he purchased a cow answering the description of the cow Mrs. King claimed to have lost, and positively identified the respondent as the man from whom he purchased the cow. The witness had never seen the respondent before he purchased the cow from him, and the next occasion

of his seeing him was in the office of the prosecuting attorney, at which time, he testified, the following took place:

"I was setting in the office and Mr.——, our sheriff, come in and got talking about—about this case. I didn't know anything about it, and the sheriff put his hand in his pocket and give me a photograph. I looked at the photograph. I says: 'I bought a cow from this man.' I didn't know anything more about it than I did anything. So the sheriff says: 'Come on with me; I want you.' Took me out doors and fetched me over to the court. They asked me—Mr. Henry asked me if this was the man. 'Do you know the man?' I says: 'Yes; that is the man, right standing out doors there, standing right there.' I was fetched upstairs in court; never knew any more about it; put on the examination stand right away."

It is urged that this testimony was incompetent, irrelevant, and immaterial, and that its admission was therefore error. We cannot agree with this contention of counsel, and think that it was entirely proper to show how and in what manner the respondent was identified by the witness as the person from whom he purchased the cow.

Other assignments urged relate largely to the charge of the court, and it is urged that the court, in referring to certain facts, gave undue prominence to the testimony of certain witnesses, and that parts of his charge were argumentative in nature. It is true that some parts of the charge taken by themselves might be subject to the criticism made of them by counsel. Nevertheless, taking the charge in its entirety, we are impressed that it carefully conserved the rights of the respondent and submitted the issue to the jury with the proper instructions.

After a careful examination of this record, we are not convinced that any prejudicial error was commit-

ted in the trial of this case, and therefore affirm the judgment of the court below.

BIRD and MOORE, JJ., concurred with KUHN, J.

BROOKE, C. J.   We are of opinion that the admission of the testimony last quoted of the witness Boilore was harmless error, and we therefore concur in the result.

PERSON, STONE, OSTRANDER, and STEERE, JJ., concurred with BROOKE, C. J.